UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| DEMARCUS DUBOSE SR and KAMYKIA MOSTELLA, on behalf of minor child D.M., | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| *Plaintiffs*, | |
| v. | |
| THE CITY OF KNOXVILLE and DAVID LEE | |
| *Defendants*. | |

Case No. 3:22-cv-139

Judge Travis R. McDonough

Magistrate Judge Debra C. Poplin

## MEMORANDUM OPINION

Before the Court are Defendant David Lee's motion for summary judgment (Doc. 30), Defendant the City of Knoxville's motion for summary judgment (Doc. 26), and Plaintiffs' motion to exclude expert testimony from Defendant David Lee (Doc. 29). For the following reasons, the Court will **GRANT** Lee's motion for summary judgment (Doc. 30), **GRANT** the City of Knoxville's motion for summary judgment (Doc. 26), and **DENY AS MOOT** Plaintiffs' motion to exclude expert testimony from Lee (Doc. 29).

I.  BACKGROUND

   A.  The April 19, 2021 Incident

On April 19, 2021, the principal of Northwest Middle School in Knoxville, Tennessee, Ms. Bost[1], and its vice principal, Ms. Loudermilk, asked the school's resource officer,

---

[1] The joint appendix once states that Bost is the principle and Loudermilk is the vice principal, and another time reverses their roles. (*Compare* Doc. 28, at 32, *with id.* at 47.) This apparent mistake does not affect the Court's analysis.

Defendant David Lee, to "hang back" as the two escorted Demarcus Dubose, Jr. ("Demarcus") to the principal's office, because they noticed that Demarcus smelled of marijuana. (Doc. 28, at 47.) At the time of the incident, Lee was employed by the Knoxville Police Department ("KPD"), an arm of Defendant the City of Knoxville. (*Id.* at 39.) As Bost, Loudermilk, and Demarcus walked to the office, Demarcus became uncooperative and asked to go the restroom. (*Id.*) Demarcus then moved to push past Loudermilk. (*Id.*) When Lee intervened and approached Demarcus, he too noticed that Demarcus smelled of marijuana. (*Id.*) Lee then told Demarcus that he could use the bathroom if he left his backpack. (*Id.* at 47.) Demarcus, Lee claims, resisted this instruction, so Lee informed him that he "had probable cause to arrest him," but Demarcus refused and "bec[ame] angry." (*Id.*)

Lee told Demarcus that he needed to search the backpack. (*Id.* at 47.) When Lee attempted to remove the backpack, Demarcus "pulled away from" Lee and said that Lee "wasn't searching nothing." (*Id.* at 39, 47.) Lee then attempted to arrest and handcuff Demarcus, but Demarcus again refused, "pull[ing] away." (*Id.*) According to Lee, Demarcus became visibly angry, physically resisted, and began to struggle; Lee performed a "leg-sweep" maneuver, causing both himself and Demarcus to fall to the ground. (*Id.* at 47–48.) After this leg sweep, Demarcus continued to struggle on the ground while Lee held him in place and advised him to stop struggling. (*Id.* at 48.) Demarcus complained that his arm hurt. (*Id.*) Eventually, Lee handcuffed Demarcus and lifted him to his feet. (*Id.*) Lee initially attempted to guide Demarcus to the principal's office, but, when Demarcus refused, Lee picked him up and carried him there. (*Id.* at 39.)

In the office, Demarcus "continued to struggle," "was very angry," and "would not sit down." (*Id.* at 48.) Demarcus attempted to leave, and, when Lee prevented Demarcus from

doing so, Demarcus "began to stomp [Lee's] feet and kick[ed] at [his] legs." (*Id.*) At this point, Lee "lifted" Demarcus and "put him on a table face down." (*Id.* at 39.) Eventually, Demarcus stopped struggling; Lee sat him in a chair and noticed a small cut on Demarcus's chin. (*Id.* at 48.) Lee asked Demarcus to let the school nurse examine the cut, but he declined. (*Id.*)

During the periods where Demarcus struggled and resisted, Lee provided some verbal instruction before resorting to force, although the exact timing of these comments is unclear. (*Id.* at 45.) According to Lieutenant Christopher McCarter, who reviewed footage from both Lee's body camera and the school's security cameras[2] after the incident, Lee "very calmly" told Demarcus to follow commands before using any force. (*Id.*) And, after the first use of force, Lee "continued to give verbal commands throughout the incident." (*Id.*) Absent any evidence to the contrary, which the Court lacks due to Plaintiffs' failure to respond, Lee's use of verbal commands, both before using force and throughout the incident, are undisputed facts.

After Demarcus had calmed, Lee called another officer, and Demarcus remained in the chair until the other officer arrived. (*Id.*) Then, Lee took Demarcus to his squad car and called the paramedics. (*Id.*) While waiting for the paramedics, Lee searched Demarcus's backpack and found tobacco. (*Id.*) Once the paramedics arrived, they advised Demarcus that the cut on his chin may require stitches. (*Id.*) Lee then contacted Demarcus's mother to inform her of the situation and, after citing Demarcus for possession of tobacco and resisting arrest, released Demarcus to her custody. (*Id.* at 39, 49.)

---

[2] Although the evidence in the record suggests that there is a body-cam video and school-security-camera video of the incident, none of the parties submitted those videos as evidence in connection with the motions presently before the Court.

After the incident, Lee created a use-of-force report, as mandated by KPD. (*Id.* at 31, 89.) This report contained a summary of the incident, which comprised the same facts as detailed above. (*Id.* at 39.) Lee listed his "reason for using force" as a "combative subject" and stated that Demarcus resisted in the following manners: (1) "confrontational w/Offcrs [sic]"; (2) "Attempted to flee"; (3) Verbally Aggressive"; (4) "Failure to comply"; (5) "Active Aggression"; (6) "Aggressive Behavior"; (7) "Hands Underneath Body"; (8) "Verbally Combative"; and (9) "Kicking Officer." (*Id.* at 40.)

In the report, Lee also detailed the type of force used, whether the force was effective, and where he applied the force to Demarcus's body. (*Id.* at 41.) Lee described the three uses of force as "tripped suspect," "arm bar," and "directional controls." (*Id.*) Lee applied the force needed to trip Demarcus to his lower right leg, the arm bar to his right forearm, and the directional controls to the back of both upper arms. (*Id.*) Lee deemed all three uses of force effective. (*Id.*) Lee also detailed injuries sustained by himself and Demarcus during the struggle. (*Id.* at 39–40.) Demarcus suffered bleeding to his lip, while Lee suffered "red marks" on his lower right leg. (*Id.* at 40–41.)

Three of Lee's superiors reviewed the report; all concluded that Lee's use of force was justified under KPD policy. (*See id.* at 43–45.) First, Sergeant Bradley Cox reviewed the report and video footage. (*Id.* at 43–44.) He concluded that "[b]ased upon my investigation the suspect was being actively resistant and Officer Lee's use of force was reasonable and within policy." (*Id.* at 43–44.) McCarter also reviewed the same materials. (*Id.* at 45.) He corroborated Lee's description of the events and added that "[p]rior to using force Officer Lee very calmly told the suspect to follow commands" and that Lee "continued to give verbal commands throughout the incident." (*Id.*) McCarter concluded that "[b]ased upon the suspect's actions Officer Lee's

response was within policy and procedure." (*Id.*) Finally, Captain Donald Jones reviewed the incident and concluded that "[b]ased on review the use of force was within policy." (*Id.*)

      B.      **KPD's Policies**

          *i.*       *Officer Training*

Tennessee Code Annotated § 38-8-107 mandates basic-training requirements for police officers in the state, and the Tennessee Peace Officer Standards and Training Commission ("POST") oversees this training. (*Id.* at 69.) KPD operates its own police training academy, which is certified by POST. (*Id.* at 70.) In addition to the basic requirements mandated by POST, KPD requires all new officers to undergo additional training. (*Id.*) For example, while POST requires ten weeks of basic training, KPD requires twenty-two. (*Id.* at 75.)

The national Commission on Accreditation of Law Enforcement Agencies ("CALEA") accredited KPD in 1992 and has determined that all KPD's training curriculum "met or exceeded the national standards required for certification." (*Id.* at 71.) CALEA also accredited the Knox County emergency communications district and KPD's training academy, making Knoxville the first jurisdiction in the world to have its police department, emergency communications district, and training academy all accredited by CALEA. (*Id.*)

In basic training, KPD requires, among other subjects, training sessions on "reasonable suspicion and probable cause, search and seizures, arrest techniques and procedures, and response to resistance/use of force." (*Id.* at 73.) After basic training, KPD requires that all officers undergo twenty weeks of field training under the supervision of a certified field-training officer. (*Id.* at 72.) Once working in the field, POST requires that all officers undergo forty hours of updated training annually, but KPD "routinely provides well in excess of this requirement." (*Id.*) KPD also possesses more stringent officer-hiring requirements than POST,

such as an increased age requirement, stricter physical and psychological examinations, and a detailed background check. (*Id.* at 80.)

Before working as a school-resource officer, an officer must undergo an additional forty-hour training session, as well as sixteen hours of updated training annually. (*Id.* at 73.) These officers can also choose to enroll in an "advanced" training which includes forty more hours of training. (*Id.* at 29.) Lee underwent this advanced training. (*Id.*)

  ii.  *Officer Misconduct and Use of Force*

KPD's internal affairs unit investigates complaints involving officer misconduct. (*Id.* at 80.) The unit's members are trained in investigating such complaints and are members of the National Internal Affairs Investigators Association. (*Id.* at 80–81.) After an investigation, unit supervisors and departmental division heads, along with the assistant chief of police and deputy chief of police, may recommend disciplinary action. (*Id.* at 81.) These recommendations are based on the department's code of conduct. (*Id.*) Chief of Police Paul M. Noel also personally reviews every complaint. (*Id.*)

Within its code of conduct, KPD promulgated a policy governing use of force. (*Id.*) Under this policy, an officer who uses force must submit a use-of-force report to the internal affairs unit. (*Id.* at 82.) Supervisors review this report and raise necessary issues to supervisors within the department. (*Id.*) Noel can initiate an internal affairs unit investigation based on these reports. (*Id.*)

**C. Procedural History**

On April 18, 2022, Demarcus's parents, Plaintiffs Demarcus Dubose, Sr. and Kamykia Mostella, brought this action on his behalf. (Doc. 1). Plaintiffs allege the following claims against Lee: (1) use of excessive force and unreasonable seizure under 42 U.S.C. §§ 1983 and

1988; (2) assault and battery; and (3) intentional infliction of emotional distress.[3] (Doc. 1, at 7–14.) Plaintiffs also allege the following claims against KPD: (1) use of excessive force and unreasonable seizure under 42 U.S.C. §§ 1983 and 1988 for Lee's actions under the doctrine of *respondeat superior*; and (2) a *Monell* claim under 42 U.S.C. §§ 1983 and 1988 for KPD's failure to train and supervise Lee. (*Id.* at 7–12.)

Lee and KPD both moved for summary judgment on all claims against them (Docs. 26, 30), and Plaintiffs moved to exclude any expert testimony from Lee (Doc. 29). All three motions are ripe for the Court's review.[4]

---

[3] While Plaintiffs allege a claim for "outrageous conduct/intentional infliction of emotional distress" (Doc. 1, at 13), for simplicity, the Court will refer to this claim only as intentional infliction of emotional distress. *See Bain v. Wells*, 936 S.W.2d 618, 622 n. 3 (Tenn. 1997) ("Intentional infliction of emotional distress and outrageous conduct are not two separate torts, but are simply different names for the same cause of action.") (citing *Moorhead v. J.C. Penney Co.*, 555 S.W.2d 713, 717 (Tenn. 1977)).

[4] Plaintiffs failed to respond to both motions for summary judgment within twenty-one days, as required by this Court's Local Rules. *See* E.D. Tenn. L.R. 7.1(a) ("[P]arties shall have 21 days in which to respond to dispositive motions . . . ."). Under Local Rule 7.2, a party's "[f]ailure to respond to a motion may be deemed a waiver of any opposition to the relief sought." E.D. Tenn. L.R. 7.2. A plaintiff's failure to address the substantive arguments raised in a motion may be viewed as a failure to respond to the motion. *See Jarvis v. Hamilton Cnty. Dep't of Educ.*, No. 1:17-cv-172, 2019 WL 1368618, at *9 (E.D. Tenn. Mar. 26, 2019) (finding that a party's failure to address arguments made in motion to dismiss resulted in waiver); *Correa v. Rubin Lublin TN, PLLC*, No. 15-2135, 2015 WL 5232081, at *3 (W.D. Tenn., Sept. 8, 2015) (finding that a party's failure to address an argument raised in a motion to dismiss amounted to a waiver of the issue).

A district court, however, cannot dismiss a plaintiff's complaint *solely* based on a lack of a response to a defendant's dispositive motion. *See Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991) ("[A] district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded.") Instead, a court must "examine the movant's motion for summary judgment [or motion to dismiss] to ensure that he has discharged [his] burden" under Federal Rules of Civil Procedure 56(c) or 12(b). *Id.* In other words, "where the adverse party has not responded to a motion to dismiss [or summary judgment], the district court must [still] consider the [motion] and make a determination accordingly." *Green v. City of Southfield*, 759 F. App'x 410, 417 (6th Cir. 2018) (citing *Carver*, 946 F.2d at 455).

## II. STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the evidence in the light most favorable to the nonmoving party and makes all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

The moving party bears the burden of demonstrating that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The moving party may meet this burden either by affirmatively producing evidence establishing that there is no genuine issue of material fact or by pointing out the absence of support in the record for the nonmoving party's case. *Celotex*, 477 U.S. at 325. Once the movant has discharged this burden, the nonmoving party can no longer rest upon the allegations in the pleadings; rather, it must point to specific facts supported by evidence in the record demonstrating that there is a genuine issue for trial. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002).

At summary judgment, the Court may not weigh the evidence; its role is limited to determining whether the record contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A mere scintilla of evidence is not enough; the Court must determine whether a fair-minded jury could return a verdict in favor of the non-movant based on the record. *Id.* at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). If not, the Court must grant summary judgment. *Celotex*, 477 U.S. at 323.

## III. ANALYSIS

### A. Lee's Motion for Summary Judgment

Plaintiffs bring the following claims against Lee: (1) use of excessive force and unreasonable seizure under 42 U.S.C. §§ 1983 and 1988; (2) assault and battery; and (3) intentional infliction of emotional distress. (Doc. 1, at 7–14.) Lee moves for summary judgment on all claims. (Doc. 30.)

#### i. *Excessive Force and Unreasonable Seizure*

Plaintiffs' claim for excessive force and unreasonable seizure is brought pursuant to 42 U.S.C. § 1983, which provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any . . . person . . . to the deprivation of any rights . . . secured by the Constitution and laws [of the United States], shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To succeed on a claim under § 1983, a plaintiff must show: "(1) that he or she was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of law." *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014) (citations omitted).

The doctrine of qualified immunity, however, shields individual government officials from damages under § 1983 "as long as their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sumpter v. Wayne Cnty.*, 868 F.3d 473, 480 (6th Cir. 2017) (internal quotation marks omitted) (quoting *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009)). In deciding whether a defendant is entitled to qualified immunity at the summary-judgment stage, the Court employs a two-part test. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009)). First, the Court determines whether the facts, viewed in the light most favorable to the plaintiff, show that the official

9
Case 3:22-cv-00139-TRM-DCP   Document 37   Filed 06/01/23   Page 9 of 18   PageID #: 432

violated a constitutional right. *Holzemer v. City of Memphis*, 621 F.3d 512, 519 (6th Cir. 2012) (citations omitted). Second, if a constitutional right was violated, the Court determines whether the right was clearly established at the time the violation occurred. *Id.* (citations omitted). The plaintiff bears the burden of "satisfy[ing] both inquires [] to defeat the assertion of qualified immunity." *Sumpter*, 868 F.3d at 480 (citing *Wesley v. Campbell*, 779 F.3d 421, 428–29 (6th Cir. 2015)). "[I]f the district court determines that the plaintiff's evidence would reasonably support a jury's finding that the defendant violated a clearly established right, the court must deny summary judgment." *DiLuzio v. Vill. of Yorkville*, 796 F.3d 604, 609 (6th Cir. 2015) (citing *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013)).

A right is clearly established when, "at the time of the challenged conduct, the contours of [the] right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (cleaned up) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Id.* (citations omitted). Courts should not attempt to define a particular right at a high level of generality. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *al-Kidd*, 563 U.S. at 742). Instead, they should assess whether it is clearly established that the particular conduct is unconstitutional. *Id.* ("This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." (citations and internal quotation marks omitted)). Still, "[i]t is not necessary[] . . . 'that the very action in question has previously been held unlawful.'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866–67 (2017) (quoting *Anderson*, 483 U.S. at 640); *see also id.* at 1867 ("[A]n officer might lose qualified immunity even if there is no reported case 'directly on point.'" (citations omitted)). That is, "[t]here need not be a case with the exact same fact pattern or even 'fundamentally

similar' or 'materially similar' facts," as long as the defendants had "fair warning" that their conduct violated the plaintiff's rights. *Goodwin v. City of Painsville*, 781 F.3d 314, 325 (6th Cir. 2015) (citations omitted); *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances.").

### a. Whether Lee Violated Demarcus's Constitutional Right

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. This includes the "right to be free of excessive force when police make an arrest or seizure." *Lyons v. City of Xenia*, 417 F.3d 565, 575 (6th Cir. 2005) (citing *Graham v. Connor*, 490 U.S. 386, 394–95 (1989)). Public-school students are entitled to these protections at their schools. *New Jersey v. T.L.O.*, 469 U.S. 325, 336–37 (1985); *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652 (1995).

An "objective reasonableness" standard governs both excessive-force claims and unreasonable-seizure claims.[5] *Graham*, 490 U.S. at 395 ("[A]ll claims that law enforcement

---

[5] When a plaintiff is a student and the incident occurs in a school setting, courts use one of two frameworks. Some courts apply the *Graham* factors and consider the student's age and size within those factors. *See, e.g.*, *Williams v. Nice*, 58 F. Supp. 3d 833, 838 (N.D. Ohio 2014); *Hoskins v. Cumberland Cnty. Bd. of Educ.*, No. 2:13-cv-15, 2014 WL 7238621, at *7 (M.D. Tenn. Dec. 17, 2014); *S.R. v. Kenton Cnty. Sheriff's Office*, No. 2:15-cv-143, 2015 WL 9462973, at *3 (E.D. Ky. Dec. 28, 2015). Others apply the less student-friendly framework articulated in *New Jersey v. T.L.O.*, 469 U.S. 325 (1985). *See, e.g.*, *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1305–06 (11th Cir. 2006). But no binding cases mandate that this Court favor one approach over the other.

In this case, Lee does not argue that the court should apply the more relaxed *T.L.O.* standard. In *Hoskins*, the court noted that "wholly different concerns are raised when, as in this case, a *law enforcement officer* seizes a child at school." 2014 WL 7238621, at *10. The court also noted that, while *T.L.O.* does not require a warrant or probable cause to search a student, the "difference between the traditional Fourth Amendment standard and the *T.L.O.* reasonableness

officers used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . .") (emphasis omitted). This test requires balancing "'the nature and quality of the intrusion on the individual's Fourth Amendment interest' against the countervailing governmental interests at stake." *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). Courts must weigh "[t]hree important but non-exhaustive factors": (1) "the severity of the crime at issue"; (2) "whether the suspect poses an immediate threat to the safety of the officers or others"; and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Goodwin*, 781 F.3d at 321 (citations omitted). Courts must judge any use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20–22 (1968)).

The undisputed evidence in this case leaves no room for a reasonable jury to find that Lee's actions were objectively unreasonable, because all three *Graham* factors favor Lee.

### 1. Severity of the Crime at Issue

The first *Graham* factor favors Lee. Although possession of marijuana on its own is not a "particularly serious or severe" crime, *see Turner v. Hill*, 5:12-cv-195, 2014 WL 549462, at *5 (W.D. Ky. Feb. 11, 2014), Demarcus's age, as well as the location and timing of the alleged

---

standard as applied to seizures is less clear." *Id.* at *11. *T.L.O.* requires a court to consider whether the seizure was reasonable "under all the circumstances," including that "the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of infraction." 469 U.S. at 341–42. This inquiry largely overlaps with the *Graham*-factor analysis. This Court finds the reasoning for applying *Graham* as discussed in *Hoskins* persuasive. Accordingly, the Court will apply the *Graham* factors instead of the *T.L.O.* test.

crime—in his middle school during school hours—elevate the severity of the crime beyond a routine marijuana-possession case. Further, Loudermilk, Bost, and Lee all reported that Demarcus smelled of marijuana, creating probable cause to believe that Demarcus committed the crime at issue.

2. *Whether Demarcus Posed an Immediate Threat to the Safety of Lee or Others*

The second *Graham* factor—whether the suspect poses an immediate threat to the safety of the officers or others—also weighs in Lee's favor. Lee did not intervene until Demarcus posed a threat to the safety of others; instead, Lee "h[u]ng back" behind the group until Demarcus pushed past Loudermilk. (Doc. 28, at 47.) It was only when Demarcus "pulled away" from Lee's attempt to grab his backpack and began to struggle that Lee performed the leg sweep. (*Id.* at 47–48.) Even then, Demarcus continued to struggle until Lee handcuffed him. (*Id.* at 48.)

From then on, Lee's uses of force only served to protect himself. For example, Demarcus "began to stomp [Lee's] feet and kick[ed] at [his] legs" when Lee prevented Demarcus from leaving the principal's office. (*Id.* at 48.) Only then did Lee "ben[d] [Demarcus] over a table face down" to prevent the struggling. (*Id.*) After Demarcus no longer posed a threat, Lee did not use any force. In fact, he did the opposite; he asked Demarcus if he wanted the school nurse to examine the cut on his chin and called for the paramedics. (*Id.*)

The Court has considered Demarcus's age and size. *See Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 174 (6th Cir. 2004) ("We must also consider the size and stature of the parties involved."). At the time of the incident, Demarcus was fourteen, and Lee estimated his height in the use-of-force report as between five-feet and five-feet-and-three-inches tall. (Doc. 28, at 40.) Despite his slight build, Demarcus was able to injure Lee and pushed through

13

Loudermilk, thereby placing educators' safety at risk. Further, Demarcus running through a middle-school hallway, and the ensuing chase could cause a danger to other students.

Lee also tailored his actions to Demarcus's age. Before using force, Lee "very calmly" told Demarcus to follow his commands. (*Id.* at 45.) And, throughout the incident, Lee continued to give verbal commands. (*Id.*) Therefore, the undisputed facts show that Demarcus's refusal to follow reasonable commands posed an immediate threat to the safety of Lee or others.

### 3. Whether Demarcus was Actively Resisting Arrest or Attempting to Evade Arrest by Flight

The third and final *Graham* factor also supports qualified immunity for Lee. An officer's use of force is not excessive when it is used in "response to active resistance, [when] some outward manifestation—either verbal or physical—on the part of the suspect had suggested volitional and conscious defiance." *Eldridge v. City of Warren*, 533 F. App'x 529, 533–34 (6th Cir. 2013); *see Rudlaff v. Gillispie*, 791 F.3d 638, 641–42 (6th Cir. 2015) ("Our cases firmly establish that it is *not* excessive force for the police to tase someone (even multiple times) when the person is actively resisting arrest.") (collecting cases). Actively resisting arrest includes "physically struggling with, threatening, or disobeying officers." *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 495 (6th Cir. 2012) (collecting cases). When a plaintiff fails to allow an officer to handcuff them, this too constitutes active resistance. *See Caie v. W. Bloomfield Twp.*, 485 F. App'x 92, 96 (6th Cir. 2012). On the other hand, "noncompliance alone does not indicate active resistance; there must be something more." *Eldridge*, 533 F. App'x at 535. When a plaintiff is not resisting arrest, is passively resisting, or has stopped resisting, he has a right to be free from any use of force. *Browning v. Edmonson Cnty.*, 18 F.4th 516, 525 (6th Cir. 2021).

In this case, the undisputed facts show that Lee only used force in response to Demarcus's active resistance or flight. First, Lee's intervention came only after Demarcus

attempted to flee and pushed past Loudermilk. When Lee attempted to search his backpack and place him under arrest, Demarcus "pulled away from" Lee and said that Lee "wasn't searching nothing"—acts of physical resistance and disobedience towards Lee. (Doc. 28, at 39, 47.) Only in response to these actions did Lee perform a leg sweep.

Still, force used to control a resisting subject must still be "the least intrusive means reasonably available." *Griffith v. Coburn*, 473 F.3d 650, 658 (6th Cir. 2007) (citations omitted). Lee's leg sweep met this requirement. The Sixth Circuit has noted that a leg sweep is "typically used by officers to bring a noncompliant individual to the ground with the least amount of force necessary." *Griffin v. Hardrick*, 604 F.3d 949, 952 (6th Cir. 2010); *see also Foster v. Tucker*, No. 3:20-cv-340, 2023 WL 2335348, at *4 (E.D. Tenn. Mar. 2, 2023) (describing a leg sweep as "minimally invasive"). Because Demarcus attempted to flee, physically resisted Lee's arrest attempt, and disobeyed his commands, Lee's leg sweep—the least intrusive use of force—was a reasonable response.

Even after this leg sweep, Demarcus continued struggling and refused to be handcuffed. (Doc. 28, at 48.) Lee did not apply additional force and only held Demarcus's arm in place. (*Id.*) Rather, he verbally urged Demarcus to stop struggling. (*Id.*) After being handcuffed, Demarcus's erratic behavior—repeatedly kicking Lee and attempting to leave—continued in the principal's office. (*Id.*) In response, Lee placed Demarcus face-down over the table to prevent him from struggling. (*Id.* at 39.) Lee only used force as a final option; he first asked Demarcus to follow his commands and continued to give verbal commands throughout the incident. (*Id.* at 45.) Once Demarcus ceased resisting, Lee used no further force. (*Id.* at 48.)

Because all three *Graham* factors favor Lee, the undisputed material facts demonstrate that Lee's actions were objectively reasonable. Therefore, Lee did not violate Demarcus's

15

Case 3:22-cv-00139-TRM-DCP   Document 37   Filed 06/01/23   Page 15 of 18   PageID #: 438

constitutional right to be free of excessive force and is entitled to qualified immunity. The Court will grant summary judgment on this claim.

### ii. Assault and Battery

Lee also moves for summary judgment on Plaintiffs' assault and battery claims. (Doc. 31, at 13.) "Where a plaintiff asserts a battery claim under Tennessee law that arises out of the same use of force as her § 1983 excessive-force claim, the analysis is the same for both causes of action." *Hodge v. Blount Cnty.*, 3:16-cv-317, 2020 WL 2355631, at *5 (E.D. Tenn. May 11, 2020) (quoting *Griffin*, 604 F.3d at 656). The same is true for assault claims. *See Harris v. Metro. Gov't of Nashville*, No. 3:06-0868, 2007 WL 4481176, at *9 (M.D. Tenn. Dec. 18, 2007). In this case, because the Court found that Lee is entitled to summary judgment on Plaintiffs' excessive-force claim, and, because the assault and battery claims arise from the same incident as the excessive-force claim, Lee is also entitled to summary judgment on the assault and battery claims.

### iii. Intentional Infliction of Emotional Distress

Lastly, Lee moves for summary judgment on Plaintiffs' claim for intentional infliction of emotional distress. (Doc. 31, at 14.) In Tennessee, to prove intentional infliction of emotional distress, a plaintiff must establish three elements: (1) "the conduct complained of must be intentional or reckless"; (2) "the conduct must be so outrageous that it is not tolerated by a civilized society"; and "(3) the conduct complained of must result in serious mental injury." *Lane v. Becker*, 334 S.W.3d 756, 762 (Tenn. Ct. App. 2010) (quoting *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). To determine whether conduct is so outrageous that it is not tolerated by a civilized society, Tennessee courts apply the test described in the Second Restatement of Torts:

> [t]he cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the

> defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous, as to go beyond all possible bounds of decency, and the be regarded as atrocious, and utterly intolerable in a civilized community.

*Pagliara v. Moses*, 605 S.W.3d 619, 628 (Tenn. Ct. App. 2020) (alteration in original) (quoting Restatement (Second) of Torts § 46 cmt. d (Am. L. Inst. 1965)).

In this case, although Lee's conduct was arguably intentional, Plaintiffs fail to create a genuine issue of fact as to the second two elements. Because, as discussed above, the undisputed facts show that Lee's actions were a reasonable response to Demarcus's active resistance, his conduct is tolerable in a civilized society. Further, Plaintiffs provide no evidence that Demarcus suffered any mental injury, let alone serious mental injury. Accordingly, the Court will grant Lee's motion for summary judgment on this claim.

### B. *KPD's Motion for Summary Judgment*

Plaintiffs bring two claims against KPD: (1) use of excessive force and unreasonable seizure under 42 U.S.C. § 1983 and § 1988 for Lee's actions under the doctrine of *respondeat superior*; and (2) a *Monell* claim under 42 U.S.C. § 1983 and § 1988 for failure to train and supervise Lee. (Doc. 1, at 7–12.) KPD moves for summary judgment on all claims against it. (Doc. 26.)

Local governments "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, local governments "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690.

However, "there can be no liability under *Monell* without an underlying constitutional violation." *Chambers v. Sanders*, 63 F.4th 1092, 1101–02 (6th Cir. 2022) (quoting *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014)).

In this case, KPD, cannot be held liable for Lee's actions under § 1983 on a *respondeat superior* theory, because no local government can be held liable under such a theory. *See Monell*, 436 U.S. at 691. And, as discussed above, the Court finds that Lee did not violate Demarcus's constitutional rights as is required to hold KPD liable under *Monell*. *See Chambers*, 63 F.4th at 1101–02. Therefore, the Court will grant summary judgment on all claims against KPD.[6]

## IV. CONCLUSION

For the above-state reasons, Lee's motion for summary judgment (Doc. 30) is **GRANTED**, and KPD's motion for summary judgment (Doc. 26) is **GRANTED**. Plaintiffs' claims against both Defendants will be **DISMISSED WITH PREJUDICE**. Because no claims remain, Plaintiffs' motion to exclude expert testimony from Lee (Doc. 29) is **DENIED AS MOOT**.

**AN APPROPRIATE JUDGMENT SHALL ENTER.**

/s/ *Travis R. McDonough*
TRAVIS R. MCDONOUGH
UNITED STATES DISTRICT JUDGE

---

[6] Plaintiffs only assert federal civil-rights claims against KPD. (Doc. 1, at 7–12.) However, in support of their state-law claims, Plaintiffs allege that KPD is responsible for Lee's acts under the doctrine of *respondeat superior*. (*Id.* at 13–14.) Nonetheless, because the Court granted summary judgment in Lee's favor on these state-law claims, Plaintiffs have no basis to assert vicarious liability against KPD.